UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION (Air Flow Meters) | Case No.  13-cv-2005<br>           20-cv-11208 |
| GOVERNMENT OF PUERTO RICO,<br><br>       Plaintiff,<br><br>v.<br><br>HITACHI AUTOMOTIVE SYSTEMS, LTD., HITACHI AUTOMOTIVE SYSTEMS AMERICAS, INC., DENSO CORP., and DENSO INTERNATIONAL AMERICA, INC.,<br><br>       Defendants. | Sean F. Cox<br>United States District Court Judge |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**I.**

The center of this case is the car part known as an air flow meter. True to its name, this equipment "measure[s] the volume of air flowing into engines." (Case No. 14-cr-20559, ECF No. 1, PageID.4.) These engine parts are the focus of the latest part of this multidistrict antitrust litigation.[1] In the instant litigation related to air flow meters, the Government of Puerto Rico

---

[1] "In 2010, authorities in the United States, the European Union, and Japan began investigating a suspected conspiracy among auto part manufacturers and suppliers to engage in anticompetitive cartel conduct. Over time, a number of manufacturing firms and executives have pleaded guilty to conspiracies to fix prices, rig bids, or allocate the market for specific auto parts." *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 809 (E.D. Mich. 2018). "Beginning in 2011, civil antitrust suits were brought in federal district courts throughout the United States on behalf of various classes of plaintiffs who alleged that they were injured as a result of the auto part price-fixing conspiracies

1

("Puerto Rico") filed a complaint last year. (Case No. 20-cv-11280, ECF No. 1.) Puerto Rico seeks at least $50 million under a state-law unjust enrichment claim as well as injunctive relief under the federal Clayton Act. In response, Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., Denso Corp., and Denso International America, Inc. ("Defendants") moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6).

The parties have briefed the issues, and the Court held a Zoom hearing on January 7, 2021. For the reasons discussed below, the Court agrees with Defendants and grants their motion to dismiss.

## II.

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "need not, however, accept unwarranted factual inferences." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

revealed in the above-cited government investigations. On February 7, 2012, the United States Judicial Panel on Multidistrict Litigation transferred these actions to the Eastern District of Michigan, and this Court subsequently entered a series of orders to coordinate and consolidate these suits in multidistrict litigation designated as *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311." *Id.*

2

Puerto Rico alleges in its complaint: "The combination and conspiracy engaged in by the Defendants and their coconspirators allowed Defendants and their co-conspirators to be unjustly enriched at the expense of the consumers and governmental agencies of Puerto Rico." (ECF No. 1, PageID.3.)

Defendants make three arguments in support of its motion to dismiss. (ECF No. 9.) First, they assert that Puerto Rico fails to state a claim for injunctive relief under the Clayton Act; there is no threat of injury from an impending antitrust violation and, even if there were one, the suit would be too late. Second, Defendants argue that Puerto Rico's unjust enrichment claim is barred by state law. Finally, the Government of Puerto Rico does not have standing to assert these claims on behalf of its citizens, they say. On all three points, Puerto Rico disagrees. (ECF No. 20.)

Notably, there are two strikingly similar cases that courts recently decided against Puerto Rico. A summary of these will set the stage for the instant case.

First, Puerto Rico filed suit against flexible polyurethane foam companies in a case that was dismissed on February 27, 2020. *See Puerto Rico v. Carpenter Co.*, 442 F. Supp. 3d 464 (D.P.R. 2020). In that price-fixing case, Puerto Rico alleged an antitrust conspiracy and sought relief pursuant to the Clayton Act as well as $50 million for unjust enrichment. *See id.* at 466–67. In 2010, lawsuits against companies in the foam industry had been consolidated in a multidistrict litigation. *See id.* at 470. Defendants moved to dismiss, making many of the same arguments advanced by Defendants here. *See id.* at 472. For reasons that will be discussed in more detail below, the court agreed with Defendants on each point and granted their motion to dismiss. *See id.* at 479.

3

Second, Puerto Rico filed suit against industrial producers of chicken meat in a case that was dismissed last summer. *See In re Broiler Chicken Antitrust Litig.*, No. 16-8637, 2020 WL 4032932 (N.D. Ill. July 15, 2020). Puerto Rico filed a separate complaint nearly two years after that court had denied motions to dismiss against the direct-purchaser plaintiffs and others. *See id.* at *1. The court dismissed the claims under the Puerto Rico Antitrust Act and the theory of unjust enrichment as well as a *parens patriae* claim for damages. *See id.* at *2–5.

### III.

### A. Standing

In this case, the Court first considers whether Puerto Rico has standing to bring suit at all.

*Parens patriae* standing, from the Latin for "parent of his or her country," is a "doctrine by which a government has standing to prosecute a lawsuit on behalf of a citizen." Black's Law Dictionary (11th ed. 2019). The ability of a state (or territory) to sue individual defendants in federal court is governed by *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982). "In order to maintain such an action," the Supreme Court held, "the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party. The State must express a quasi-sovereign interest." *Snapp*, 458 U.S. at 607. The *Snapp* Court articulated at least two quasi-sovereign interests: "interest in the health and well-being—both physical and economic—of its residents in general" and "interest in not being discriminatorily denied its rightful status within the federal system." *Id.* The Court explained that "more must be alleged than injury to an identifiable group of individual residents." *Id.*

The Sixth Circuit recently considered this doctrine in holding that the State of Arizona did not have *parens patriae* standing to intervene in a case after a settlement was awarded. *See*

*Chapman v. Tristar Prods., Inc.*, 940 F.3d 299 (6th Cir. 2019). The objections that the state wished to make were "indistinguishable from the objections which individual Arizonans might raise." *Id.* at 306. That is, "the only injury alleged is injury to an identifiable group of Arizonans" and Arizona as a state "has not shown any imperiled quasi-sovereign interests." *Id.* Other courts of appeal have followed similar logic in other cases. *See, e.g.*, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017) ("The complaint contains no specific allegations about the statewide magnitude of these difficulties or the extent to which they affect more than just an 'identifiable group of individual' egg farmers." (quoting *Snapp*, 485 U.S. at 607)).

In their motion to dismiss, Defendants here argue the following:

> First, to the extent Puerto Rico seeks to bring claims on behalf of its citizens, it fails to plead facts demonstrating that its citizens could not vindicate their own interests through a class action—the preferred method for damages arising out of anticompetitive conduct—just as the EPPs did years ago. . . . Second, Plaintiff asserts that it brings suit "as *parens patriae* . . . to enforce public rights and to protect its residents from Defendants' unjust enrichment." But Plaintiff does not identify any such "public rights" associated with its claims, and "protecting" citizens "from Defendants' unjust enrichment" is merely another way of asserting its citizens' *own* claims for unjust enrichment. . . . Finally, Plaintiff's assertion that "Plaintiff, the population of Puerto Rico, and its consumers have sustained injury to their *businesses or property*" similarly fails to establish *parens patriae* standing because injury to the government's own business or property is not a quasi-sovereign interest.

(ECF No. 9, PageID.93–94.) Puerto Rico responds that it "has a legitimate and vital state interest in seeking a recovery for the economic harm that Defendants caused through their admittedly illegal conspiracy" and that its "present financial hardship is another factor demonstrating its interest and desire to seek relief on behalf of its population." (ECF No. 20, PageID.240–41.)

Defendants have the better of the argument. To be sure, certain citizens of Puerto Rico may have suffered an injury if they bought air flow meters that were at issue in this case. But Puerto

5

Rico does not explain how an injury to this "identifiable group of individual residents" amounts to a "quasi-sovereign interest." *See Snapp*, 458 U.S. at 607. Nor does the complaint contain "specific allegations about the statewide magnitude of these difficulties." *See Koster*, 847 F.3d at 652. As the defendants' brief persuasively argues, these injuries did not relate to public rights. And, as the defendants' brief correctly notes, neither the injury to the government's own property—if it indeed purchased these auto parts—nor financial hardship alone is sufficient for this type of standing.

Additionally, Puerto Rico maintains that it has standing based on its own statutes. The argument centers on the wording of 32 L.P.R.A. § 3341, which says the government of Puerto Rico has a right "in their capacity of 'parens patriae' to file a class suit on behalf of said consumers by reason of damages as well as injunction suits." According to Puerto Rico's brief, the state legislature "explicitly" recognizes Puerto Rico's ability to bring a suit such as this one. (ECF No. 20, PageID.238.) There is competing case law on this issue. One court stated that "Thirteen states and the Commonwealth of Puerto Rico . . . have expressly conferred *parens patriae* authority upon their Attorneys General." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 521 (E.D. Mich. 2003). However, that broad statement does not specifically say that Puerto Rico can bring *any type* of case it wants on behalf of its citizens, including an equitable claim of unjust enrichment. In fact, the court in *Carpenter* held the opposite: "[N]o Commonwealth statute nor Puerto Rico Supreme Court precedent explicitly provides for parens patriae standing to present unjust enrichment claims." *See* 442 F. Supp. 3d at 479.

Although it is questionable, the Court will assume that Puerto Rico has standing and continue to the merits.

6

## B. Unjust Enrichment

There are five elements to an unjust enrichment action under Puerto Rico law: "1) existence of enrichment; 2) a correlative loss; 3) nexus between loss and enrichment; 4) lack of cause for enrichment; and 5) absence of a legal precept excluding application of enrichment without cause." *Puerto Rico Tel. Co. v. SprintCom, Inc.*, 662 F.3d 74, 97 (1st Cir. 2011) (emphasis and citation omitted); *accord Carpenter*, 442 F. Supp. 3d at 476–77. One question here, then, is whether another "legal precept" applies. Defendants say that one does: the Puerto Rico Antitrust Act ("PRAA"), 10 L.P.R.A. § 268. Puerto Rico responds that the PRAA is not an available avenue because indirect purchasers cannot use it to sue.

The Supreme Court has held that indirect purchasers generally may not sue for damages under federal antitrust laws. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–48 (1977). Some states have passed statutes expressly permitting such suits under state law. *See Broiler Chicken*, 2020 WL 4032932, at *3–4. But as Puerto Rico acknowledges, its government has not done so. (ECF No. 20, PageID.226.) So, Puerto Rico says, "[b]ecause the PRAA does not create a right to relief for indirect purchasers, Plaintiff may bring a claim for unjust enrichment." (ECF No. 20, PageID.230.) This logic does not hold water, however. "[T]he vast majority of courts rightly hold that unjust enrichment may not supply a valid cause of action in states where plaintiffs are otherwise barred from recovery under relevant antitrust and consumer protection statutes." *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088 (S.D. Cal. 2017). "[A]fter all, unjust enrichment is an equitable remedy, and it would be inequitable to permit relief where the state has clearly made a policy determination that no such relief should lie." *Id.* at 1088–89 (citation omitted). Puerto Rico's position "amounts to an attempt to circumvent *Illinois Brick*,

7

which confined antitrust claims to direct purchasers, in the absence of a showing that such a recovery is allowed." *See In re Novartis & Par Antitrust Litig.*, No. 18-11835, 2019 WL 3841711, at *6 (S.D.N.Y. Aug. 15, 2019) (dismissing unjust enrichment claim brought by Puerto Rico).[2]

In attempting to fight this rationale, Puerto Rico cites cases such as *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008) and *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669–71 (E.D. Mich. 2000). But subsequent courts have deemed those older cases to be irrelevant or not persuasive. *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 763 (E.D. Pa. 2014) (stating that *G-Fees* "is an outlier decision"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1192 (N.D. Cal. 2009) ("Contrary to plaintiffs' suggestion, the *Cardizem* court did not hold that indirect purchaser plaintiffs who lacked standing under a state antitrust statute could repackage that claim as an unjust enrichment claim."). Puerto Rico also points to an opinion related to the Body Sealing Products litigation. *See In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2017 WL 11441039 (E.D. Mich. Sept. 28, 2017). But that opinion considered only the situation of a statutory ban against "antitrust or consumer protection *class action claims*," *see id.* at *1 (emphasis added), rather than a statute like the PRAA, which does not allow indirect purchasers to recover in *any type of action*.

In conclusion, there is a legal precept that forbids Puerto Rico to recover damages as an indirect purchaser. So the principle of unjust enrichment does not apply here.

---

[2] At oral argument, counsel for Defendants noted the recent case considering *Illinois Brick* in this context. *See In re Pork Antitrust Litig.*, No. 18-1776, 2020 WL 6149666, at *32 (D. Minn. Oct. 20, 2020). This case law does not alter the Court's analysis.

**C. Injunctive Relief**

Puerto Rico's argument for injunctive relief also fails.

The Clayton Act authorizes suits "against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. Such an action is subject to the "same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity." *Id.* In deciding whether to issue an injunction, a district court must weigh four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Louisiana-Pacific Corp. v. James Hardie Bldg. Prods., Inc.*, 928 F.3d 514, 517 (6th Cir. 2019).

In its brief, Puerto Rico argues that Defendants' conspiracy "was an unreasonable restraint of interstate and foreign trade and commerce" and that the Court should "preclud[e] defendants from continuing this illegal activity." (ECF No. 1, PageID.3–4.) As a threshold question, the Court questions whether any illegal activity is still occurring. The complaint says that illegal conduct lasted "from at least as early as January 2000 and continuing until at least February 2010." (ECF No. 1, PageID.14.) But that was more than a decade ago. Indeed, Defendants' motion to dismiss clearly shows that Puerto Rico's complaint mostly copies allegations made in 2013. (ECF No. 9-1.)

Less than a year ago, another court addressed a nearly identical situation involving Puerto Rico's request for injunctive relief in an antitrust case. That court provided persuasive justification for dismissing the case and refusing to issue an injunction:

9

> Plaintiff has failed to present a cogent argument for establishing an impeding, contemporary and threatened harm. Although an alleged price-fixing conspiracy could have possibly occurred throughout the Nation, as the multi-district antitrust lawsuits, settlement agreements and monetary fines reveal, it is apparent from the face of the Complaint that the last injurious act in this entire scheme befell almost ten years ago. . . . Not a single pleading references a recent act (from 2011 to 2018), nor does it relate to the Defendants' businesses in the Commonwealth of Puerto Rico. Simply adding the phrase, "including Puerto Rico" at the end of every other allegation in the Complaint is not specific enough to survive the burden at this stage. . . . "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d [6, 14 (1st Cir. 2008)]. Consequently, Plaintiff has failed to plausibly establish that injunctive relief should be granted. The Court will not proceed with almost decade-old allegations, as Defendants correctly point out.

*Carpenter*, 442 F. Supp. 3d at 474–75.

Puerto Rico's brief devotes just two paragraphs to its request for an injunction. In response to the issue of "present adverse effects," Puerto Rico largely ignores it, saying that "such present adverse effects are self-evident: given that the current owner of a vehicle that contains parts that were overpriced, when that owner sells the vehicle, she is going to have to pass that overcharge to the new owner." (ECF No. 20, PageID.243.) The Court does not believe these effects to be self-evident. As Defendants accurately reply: "[T]hat is entirely speculative, premised on future conduct by third party vehicle owners, *not* Defendants, and in any event would not be prevented by an injunction against Defendants." (ECF No. 21, PageID.342–43.) At oral argument, counsel for Puerto Rico repeated the rationale from its brief and added that more facts might turn up in discovery. Having not plausibly pleaded a contemporary harm in its complaint, however, Puerto Rico cannot continue to search for one. This Court agrees with the conclusion from *Carpenter*.

Defendants also state that any injunctive claim would be time-barred under the doctrine of laches. Since Defendants have a winning argument on the merits, however, the Court will not consider this alternative assertion.

## IV.

Defendants' motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 15, 2021

s/Sean F. Cox
Sean F. Cox
U. S. District Judge